UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| NANCY WRIGLEY, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>MASTEC, INC., JOSE R. MAS, and GEORGE L. PITA,<br><br>　　　　　　　　　　　　　Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Nancy Wrigley ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding MasTec, Inc., ("MasTec" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired MasTec securities between August 12, 2014 and March 17, 2015, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      MasTec, Inc., an infrastructure construction company, provides engineering, building, installation, maintenance, and upgrade services for energy, utility, and communications infrastructure primarily in the United States. It operates in five segments: Communications, Oil and Gas, Electrical Transmission, Power Generation and Industrial, and Other. The Company builds pipelines for natural gas, crude oil, and refined product transportation; underground and overhead distribution systems comprising trenches, conduits, and cable and power lines that provide wireless and wireline communications; electrical power generation, transmission, and distribution systems; power generation infrastructure, including renewable energy; heavy industrial plants; and compressor and pump stations, and treatment plants. It also installs electrical and other energy distribution and transmission systems, power generation facilities, buried and aerial fiber optic cables, coaxial cables, copper lines, and satellite dishes in various environments.

3.      In addition, the Company provides maintenance and upgrade support services that consist of maintenance of distribution facilities; and networks and infrastructure, including natural gas and petroleum pipelines, wireless, power generation, and electrical distribution and transmission infrastructure, as well as emergency services for accidents or storm damage, and

routine replacements and upgrades to overhauls. Its customers include public and private energy providers, pipeline operators, wireless service providers, satellite and broadband operators, local and long distance carriers, and government entities.

4. MasTec, Inc. was founded in 1929, is headquartered in Coral Gables, Florida, and its shares trades on the NYSE under the ticker symbol "MTZ".

5. In each 10-Q filed during the class period, the Company stated the following regarding its use of "Performance and Payment Bonds":

> **Performance and Payment Bonds.** In the ordinary course of business, MasTec is required by certain customers to provide performance and payment bonds for some of the Company's contractual commitments related to projects in process. These bonds provide a guarantee to the customer that the Company will perform under the terms of a contract and that the Company will pay subcontractors and vendors. If the Company fails to perform under a contract or to pay subcontractors and vendors, the customer may demand that the surety make payments or provide services under the bond. The Company must reimburse the surety for any expenses or outlays it incurs.

6. Following this brief explanation of the Performance and Payment Bonds, the Company would report the estimated cost to complete projects secured by the Company's performance and payment bonds and report the value of the performance and payment bonds.

7. Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's financial performance. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (1) certain cost to complete estimates, currently believed to be in the range of zero to $13 million, which were recognized during the company's third quarter of 2014, should have been recognized during the second quarter of 2014; (2) MasTec's internal control over financial reporting was ineffective; and (3) as a result of the foregoing, MasTec's public statements were materially false and misleading at all relevant times.

8. On February 26, 2015, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the 2014 fourth quarter and full year. In the press release, the Company stated, in part:

> The Audit Committee of the Company's Board of Directors, with the assistance of independent counsel, is undertaking an independent review primarily to determine whether certain cost to complete estimates, currently believed to be in the range of zero to $13 million, which were recognized during the Company's third quarter of 2014, should have been recognized during the second quarter of 2014….[T]he Company expects to extend until March 17, 2015 the filing date of its Annual Report on Form 10-K for the year ended December 31, 2014, as permitted by Securities and Exchange Commission rules.

9. On March 2, 2015, the Company filed a Form 12b-25 with the SEC, notifying the SEC that it would delay the filing of its Annual Report on Form 10-K for the period ended December 31, 2014. In the filing, the Company stated, in part: "The subject annual report…will be filed on or before the fifteenth calendar day following the prescribed due date."

10. On March 17, 2015, after the close of trading, the Company issued a press release, announcing a further delay in filing its 2014 Form 10-K. In the press release, the Company stated, in part:

> MasTec, Inc. (NYSE: MTZ) today announced an update regarding its filing of its Annual Report on Form 10-K for the fiscal year ended December 31, 2014. The Audit Committee and its independent counsel are still conducting the previously disclosed independent internal investigation. As a result, the Company will not be able to timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2014 by today's extended deadline pursuant to Securities and Exchange Commission rules.
>
> The Audit Committee has not reached any conclusions and is undertaking additional review of accounting estimates. The Company cannot predict the outcome of the Audit Committee's investigation, its ultimate scope or when it will be completed.

11. As a result of this news, shares of MasTec fell $1.88 or over 9.5% on unusually heavy volume, to close at $17.82 on March 18, 2015.

12. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

15. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as defendant is headquartered in this District and a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

16. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

17. Plaintiff, as set forth in the attached Certification, acquired MasTec securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18. Defendant MasTec is a Florida corporation with its principal executive offices located at 800 S. Douglas Road, 12th Floor, Coral Gables, FL 33134. MasTec's common stock trades on the NYSE under the ticker symbol "MTZ."

19. Defendant Jose R. Mas ("Mas") has served at all relevant times as the Company's Chief Executive Officer ("CEO").

20. Defendant George L. Pita ("Pita") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

21. The defendants referenced above in ¶¶ 19 - 20 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22. MasTec, Inc., an infrastructure construction company, provides engineering, building, installation, maintenance, and upgrade services for energy, utility, and communications infrastructure primarily in the United States. It operates in five segments: Communications, Oil and Gas, Electrical Transmission, Power Generation and Industrial, and Other. Its customers include public and private energy providers, pipeline operators, wireless service providers, satellite and broadband operators, local and long distance carriers, and government entities.

23. MasTec, Inc., founded in 1929, is headquartered in Coral Gables, Florida, and its shares trades on the NYSE under the ticker symbol "MTZ".

24. In each 10-Q filed during the class period, the Company stated the following regarding its use of "Performance and Payment Bonds":

> **Performance and Payment Bonds.** In the ordinary course of business, MasTec is required by certain customers to provide performance and payment bonds for some of the Company's contractual commitments related to projects in process. These bonds provide a guarantee to the customer that the Company will perform

under the terms of a contract and that the Company will pay subcontractors and vendors. If the Company fails to perform under a contract or to pay subcontractors and vendors, the customer may demand that the surety make payments or provide services under the bond. The Company must reimburse the surety for any expenses or outlays it incurs.

25.     Following this brief explanation of the Performance and Payment Bonds, the Company would report the estimated cost to complete projects secured by the Company's performance and payment bonds and report the value of the performance and payment bonds. As alleged below, each of those statements were materially false and misleading.

### Materially False and Misleading Statements Issued During the Period

26.     On August 11, 2014, after the close of trading, the Company filed a Form 10-Q with the SEC which was signed by Defendants Mas and Pita. In the 10-Q, the Company reiterated the Company's previously announced quarterly financial results and financial position, including net income of $31.9 million, or $0.37 per diluted share, on revenue of $1.1 billion, compared to net income of $34.9 million, or $0.41 per diluted share, on revenue of $978 million for the same period in the prior year. In addition, the 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Mas and Pita, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     Regarding the Company's Performance and Payment Bonds, including estimated "cost to complete" projects, the Company stated in the 10-Q:

> **Performance and Payment Bonds.** In the ordinary course of business, MasTec is required by certain customers to provide performance and payment bonds for some of the Company's contractual commitments related to projects in process. These bonds provide a guarantee to the customer that the Company will perform under the terms of a contract and that the Company will pay subcontractors and vendors. If the Company fails to perform under a contract or to pay subcontractors and vendors, the customer may demand that the surety make payments or provide services under the bond. The Company must reimburse the surety for any

expenses or outlays it incurs. As of June 30, 2014, the estimated cost to complete projects secured by the Company's $0.5 billion in performance and payment bonds was $177.7 million. As of December 31, 2013, the estimated cost to complete projects secured by the Company's $1.1 billion in performance and payment bonds was $297.1 million.

28.     On October 30, 2012, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the third quarter ending September 30, 2014. The Company reported net income of $45.4 million or $0.53 per diluted share, on revenue of $1.30 billion, compared to net income of $46.2 million or $0.54 per diluted share, on revenue of $1.27 billion for the same period in the prior year.

29.     On October 30, 2014, the Company filed a Form 10-Q with the SEC which was signed by Defendants Mas and Pita, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Mas and Pita, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.     Regarding the Company's Performance and Payment Bonds, including estimated "cost to complete" projects, the Company stated in the 10-Q:

> **Performance and Payment Bonds.** In the ordinary course of business, MasTec is required by certain customers to provide performance and payment bonds for certain of its contractual commitments associated with projects in process. These bonds provide a guarantee to the customer that the Company will perform under the terms of a contract and that the Company will pay subcontractors and vendors. If the Company fails to perform under a contract or to pay subcontractors and vendors, the customer may demand that the surety make payments or provide services under the bond. The Company must reimburse the surety for any expenses or outlays it incurs. As of September 30, 2014, the estimated cost to complete projects secured by the Company's $748.6 million in performance and payment bonds was $53.1 million. As of December 31, 2013, the estimated cost to complete projects secured by the Company's $1.1 billion in performance and payment bonds was $297.1 million.

31.     The statements referenced in ¶¶ 26-30 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: : (1) certain cost to complete estimates, currently believed to be in the range of zero to $13 million, which were recognized during the company's third quarter of 2014, should have been recognized during the second quarter of 2014; (2) MasTec's internal control over financial reporting was ineffective; and (3) as a result of the foregoing, MasTec's public statements were materially false and misleading at all relevant times.

### The Truth Begins To Emerge

32.     On February 26, 2015, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the 2014 fourth quarter and full year. In the press release, the Company stated, in part:

> The Audit Committee of the Company's Board of Directors, with the assistance of independent counsel, is undertaking an independent review primarily to determine whether certain cost to complete estimates, currently believed to be in the range of zero to $13 million, which were recognized during the Company's third quarter of 2014, should have been recognized during the second quarter of 2014….[T]he Company expects to extend until March 17, 2015 the filing date of its Annual Report on Form 10-K for the year ended December 31, 2014, as permitted by Securities and Exchange Commission rules.

33.     On March 2, 2015, the Company filed a Form 12b-25 with the SEC, notifying the SEC that it would delay the filing of its Annual Report on Form 10-K for the period ended December 31, 2014. In the filing, the Company stated, in part: "The subject annual report…will be filed on or before the fifteenth calendar day following the prescribed due date."

34.     On March 17, 2015, after the close of trading, the Company issued a press release, announcing a further delay in filing its 2014 Form 10-K. In the press release, the Company stated, in part:

> MasTec, Inc. (NYSE: MTZ) today announced an update regarding its filing of its Annual Report on Form 10-K for the fiscal year ended December 31, 2014. The Audit Committee and its independent counsel are still conducting the previously disclosed independent internal investigation. As a result, the Company will not be able to timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2014 by today's extended deadline pursuant to Securities and Exchange Commission rules.
>
> The Audit Committee has not reached any conclusions and is undertaking additional review of accounting estimates. The Company cannot predict the outcome of the Audit Committee's investigation, its ultimate scope or when it will be completed.

35. As a result of this news, shares of MasTec fell $1.88 or over 9.5% on unusually heavy volume, to close at $17.82 on March 18, 2015.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired MasTec securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

37. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, MasTec securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by MasTec or its transfer agent and may be notified

of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

39. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of MasTec;

- whether the Individual Defendants caused MasTec to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of MasTec securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

42.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- MasTec securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold MasTec securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

45.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of MasTec securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire MasTec securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

48.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were

designed to influence the market for MasTec securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about MasTec's finances and business prospects.

49. By virtue of their positions at MasTec, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of MasTec securities from their personal portfolios.

51. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of MasTec, the Individual Defendants had knowledge of the details of MasTec's internal affairs.

52. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of MasTec. As officers and/or directors of a publicly-held company, the Individual Defendants had

a duty to disseminate timely, accurate, and truthful information with respect to MasTec's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of MasTec securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning MasTec's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired MasTec securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

53. During the Class Period, MasTec securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of MasTec securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of MasTec securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of MasTec securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

54.  By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

56.  Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.  During the Class Period, the Individual Defendants participated in the operation and management of MasTec, and conducted and participated, directly and indirectly, in the conduct of MasTec's business affairs.  Because of their senior positions, they knew the adverse non-public information about MasTec's misstatement of income and expenses and false financial statements.

58.  As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to MasTec's financial condition and results of operations, and to correct promptly any public statements issued by MasTec which had become materially false or misleading.

59.  Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which MasTec disseminated in the marketplace during the Class Period concerning MasTec's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause MasTec to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of MasTec within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of MasTec securities.

60. Each of the Individual Defendants, therefore, acted as a controlling person of MasTec. By reason of their senior management positions and/or being directors of MasTec, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, MasTec to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of MasTec and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by MasTec.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

May 7, 2015

Respectfully submitted,

**POMERANTZ, LLP**
By: *s/ Jayne A. Goldstein*
Jayne A. Goldstein #144088
1792 Bell Tower Lane, Suite 203
Weston, Florida 33326
Telephone: (954) 315-3454
Facsimile: (954) 315-3455

**POMERANTZ LLP**
Jeremy A. Lieberman
C. Dov Berger
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

and

**BRONSTEIN GEWIRTZ & GROSSMAN LLP**
Peretz Bronstein
60 E. 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiff*