**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:15-cv-21740-COOKE/TORRES


NANCY WRIGLEY, individually and on
behalf of all others similarly situated,

                 Plaintiff,

    v.

MASTEC, INC., JOSÉ R. MAS, and
GEORGE L. PITA,

                 Defendants.

_____/


**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**


HOGAN LOVELLS US LLP
600 Brickell Avenue
Suite 2700
Miami, FL 33131
United States
Telephone: (305) 459-6500
Facsimile:  (305) 459-6550

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ..........................................................................................1

ARGUMENT .............................................................................................................2

     I.    THE AMENDED COMPLAINT FAILS TO ALLEGE FACTS GIVING RISE
          TO A STRONG INFERENCE OF SCIENTER ........................................................2

          A.    The Amended Complaint Fails to Raise a Strong Inference
              of Scienter with Respect to Any Individual Defendant ............................. 2

              1.    The Amended Complaint Alleges No Facts from
                      Which Knowledge of Fraud or Recklessness Can
                      Be Inferred with Respect to Either Mr. Mas or Mr.
                      Pita ..................................................................................... 3

              2.    The Lead Plaintiffs' Other Miscellaneous Theories
                      Do Not Raise a Strong Inference of Scienter................................. 4

              3.    The Facts Alleged in the Amended Complaint
                      Support a Compelling Inference Against Scienter......................... 5

     II.    THE AMENDED COMPLAINT FAILS TO ALLEGE AN ACTIONABLE
          MISSTATEMENT..................................................................................6

              A.    The Defendants' Statements Were Not Materially False or
              Misleading.......................................................................... 6

              B.    The Defendants' Forward-Looking Statements Are Not
               Actionable .......................................................................... 7

   III.    THE AMENDED COMPLAINT FAILS TO ALLEGE LOSS CAUSATION...................8

   IV.    THE AMENDED COMPLAINT FAILS TO ALLEGE CONTROL PERSON
          LIABILITY...........................................................................................9

    V.    LEAVE TO AMEND SHOULD NOT BE GRANTED........................................9

   IV.    CONCLUSION.....................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................8

*Druskin v. Answerthink, Inc.*,
   299 F. Supp. 2d 1307 (S.D. Fla. 2004) ...............................................................................4, 7

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
   595 F. Supp. 2d 1253 (M.D. Fla. 2009), *aff'd,* 594 F.3d 783 (11th Cir. 2010) ........................5

*Fidel v. Rampell*,
   2005 WL 5587454 (S.D. Fla. 2005) .........................................................................................4

*FindWhat Investor Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011) ................................................................................................8

*Fuechtman v. MasTec, Inc.*,
   390 F. Supp. 2d 1264 (S.D. Fla 2005) ......................................................................................6

*Hall v. United Ins. Co. of Am.*,
   367 F.3d 1255 (11th Cir. 2004) ..............................................................................................10

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
   2015 WL 9647524 (N.D. Ga. 2015) .........................................................................................9

*In re Pegasus Wireless Corp.*,
   2009 WL 3055208 (S.D. Fla. 2009) .........................................................................................3

*Maverick Fund, L.D.C. v. Lender Processing Servs., Inc.*,
   2015 WL 5559861 (M.D. Fla. 2015) ........................................................................................3

*Mizzaro v. Home Depot, Inc.*,
   544 F.3d 1230 (11th Cir. 2008) ............................................................................................3, 5

*Mogensen v. Body Cent. Corp.*,
   15 F. Supp. 3d 1191 (M.D. Fla. 2014) ......................................................................................4

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
   297 F.3d 1182 (11th Cir. 2002) ................................................................................................7

*Rosenberg v. Gould*,
   554 F.3d 962 (11th Cir. 2009) ..................................................................................................9

*Sapssov v. Health Mgmt. Assoc., Inc.*,
  608 Fed. App'x 855 (11th Cir. 2015) ........................................................................9

*S.E.C. v. Merchant Capital, LLC*,
  483 F.3d 747 (11th Cir. 2007) ................................................................................7

*Slayton v. Am. Exp. Co.*,
  604 F.3d 758 (2d Cir. 2010) .....................................................................................6

*Thorpe v. Walter Inv. Mgmt. Corp.*,
  111 F. Supp. 3d 1336 (S.D. Fla. 2015) ...............................................................2, 3, 5

*Waterford Twp. v. BankUnited Fin. Corp.*,
  2010 WL 1332574 (S.D. Fla. 2010) ..........................................................................5

## **SUMMARY OF ARGUMENT**[1]

The PSLRA requires Lead Plaintiffs to adequately allege:  (1) scienter; (2) actionable misstatements or omissions; and (3) loss causation.  Plaintiffs have not met their burden with respect to any one of these requirements.

*First*, Lead Plaintiffs improperly ground their scienter argument on non-specific alleged statements by confidential witnesses despite that none of these witnesses can identify a single instance in which either of the Individual Defendants received information or made non-public statements contradicting MasTec's public statements.  Lead Plaintiffs then largely ignore facts demonstrating the absence of scienter (*e.g.*, no suspicious stock sales; MasTec's stock repurchases during the class period; prompt decision to order an independent investigation) and instead focus upon innocuous facts routinely rejected by courts as evidence of scienter (*e.g.*, SOX certifications; incentive compensation; supposed access to information).  In the end, Lead Plaintiffs' theory that the Defendants orchestrated a complicated and multi-pronged scheme that ultimately resulted in an *increase* in net income simply defies common sense.  It is neither cogent nor compelling.  It also is far less plausible than the competing and compelling inference that MasTec simply reviewed certain accounting matters in one of the Company's business segments and then made accounting adjustments that had little impact on the Company's financial statements.

*Second*, with respect to materiality, Lead Plaintiffs ask the Court to ignore that the accounting restatement underlying this lawsuit was minor and actually led to a net *increase* in the Company's overall 2014 reported net income.[2]  Instead, although the PSLRA was enacted to deter costly but meritless cases such as this one, Lead Plaintiffs argue that the Court should defer consideration of materiality until a later day – presumably after millions of dollars in discovery

---

[1] Plaintiffs' Amended Class Action Complaint is cited herein as "Am. Compl. ¶ ___", Defendants' Motion to Dismiss is cited herein as "Defs.' Mot. at ___", and Plaintiffs' Opposition to Defendants' Motion to Dismiss is cited herein as "Pls.' Opp. at ___."  Terms previously defined in Defendants' Motion to Dismiss shall have the same meaning in this Reply.

[2] The accounting adjustments increased previously reported net income for the nine months ended September 30, 2014 (the period covered by the Restatement) by approximately $1.5 million.  After adding the results from the fourth quarter, the Company's net income increased by $282,000, or less than 0.0025% of the Company's net income of $115.9 million, for the year ending December 31, 2014.  *See* MasTec Form 10-K (2014), filed with the SEC on July 31, 2015, at 61-72.

costs.  Materiality, however, can and should be decided now.  Additionally, the forward-looking statements challenged by the Amended Complaint (*e.g.*, Am. Compl. ¶ 200) are protected by the statutory safe-harbor.

*Third*, Lead Plaintiffs assert that one may plausibly infer that the decline in MasTec's stock was caused by a previously disclosed accounting restatement that resulted in a net gain, as opposed to new earnings information unrelated to the alleged accounting issues.  As with materiality, Lead Plaintiffs again ask the Court to defer consideration of this issue until after discovery.  But the law is clear:  Where, as here, a plaintiff cannot allege a plausible theory of loss causation, dismissal is warranted.

This is a classic "strike-suit" in which an alleged fraud-by-hindsight complaint has been reflexively filed because a corporation's stock price dropped.  Lead Plaintiffs have had considerable time to construct a viable theory of fraud.  They have failed.  The Amended Complaint should be dismissed.

## ARGUMENT

**I.     THE AMENDED COMPLAINT FAILS TO ALLEGE FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER.**

**A.     The Amended Complaint Fails to Raise a Strong Inference of Scienter with Respect to Any Individual Defendant.**

As stated in Defendants' Motion to Dismiss, Lead Plaintiffs must demonstrate scienter separately with respect to each defendant.  Lead Plaintiffs pay lip service to this requirement in their brief, but the Amended Complaint does precisely what the law prohibits and lumps all defendants together.  Thus, rather than alleging facts that demonstrate the specific knowledge of Mr. Mas or Mr. Pita, the allegations of the Amended Complaint arguably bearing on scienter routinely refer to "Defendants" or the "Individual Defendants" or "management."[3]  This Court recently rejected precisely this approach and held that general allegations regarding "Defendants" or "Individual Defendants" should be "disregarded":  The PSLRA "requires Plaintiffs to allege what each Defendant knew, how the Defendant knew that information and when each Defendant knew or should have known the information."  *Thorpe v. Walter Inv.*

---

[3] *See, e.g.*, Am. Compl. ¶¶ 117 ("Defendants"); 150 ("Defendants"); 163-165 ("management"); 237-239 ("Defendants," "Individual Defendants"); 242 ("Defendants").

*Mgmt. Corp.*, 111 F. Supp. 3d 1336, 1359-60 (S.D. Fla. 2015) (collecting cases); *see also Mizzaro v. Home Depot*, 544 F.3d 1230, 1238 (11th Cir. 2008).

Lead Plaintiffs, despite using the same approach rejected in *Thorpe*, make the unconvincing claim that they have not resorted to "group pleading" or, alternatively, that group pleading actually may be permissible in the Eleventh Circuit. Pls.' Opp. at 20, n.23. Lead Plaintiffs are wrong on both points. *See, e.g.,* note 3 *supra* (identifying paragraphs of the Amended Complaint that rely on group pleading); *Thorpe*, 111 F. Supp. 3d at 1359 ("[T]he group pleading doctrine does not apply to the PSLRA's scienter requirements."); *In re Pegasus Wireless Corp.*, 2009 WL 3055205, at \*3 (S.D. Fla. Sept. 21, 2009) (same); *see also Maverick Fund, L.D.C. v. Lender Processing Servs., Inc.*, 2015 WL 5559761, at \*5 (M.D. Fla. Sept. 21, 2015) ("The scienter inquiry must be undertaken as to each defendant and each alleged violation.").

1.      **The Amended Complaint Alleges no Facts from Which Knowledge of Fraud or Recklessness Can Be Inferred with Respect to Either Mr. Mas or Mr. Pita.**

Lead Plaintiffs' scienter argument critically depends on the purported statements of "confidential witnesses." But not a single confidential witness has alleged that either Mr. Mas or Mr. Pita had any knowledge that was in any way contrary to the Company's public statements. *See* Am. Compl. ¶¶ 62-114. In fact, based on the Amended Complaint, none of the confidential witnesses apparently said a single word about either of the Individual Defendants – or if they did, their statements apparently were unhelpful to Lead Plaintiffs and did not find their way into the Amended Complaint. Instead, the Amended Complaint recites only general allegations from confidential witnesses regarding the purported knowledge of unspecified persons,[4] or specified persons other than the Individual Defendants.[5]

These general allegations relied upon by Lead Plaintiffs, however, are insufficient to establish scienter. Even though courts may infer scienter "when confidential witnesses point to the specific details of first-hand interactions *with a defendant* in which they advised him that

---

[4] *See, e.g.*, Am. Compl. ¶¶ 65 ("managers"); 66 (the "Company"); 67 ("executives"); 72 ("executives"); 78 ("executives"); 80 ("supervisors"); 88 ("executives"); 95 ("executives"); 106 ("management"); 109 ("executives"); 111 ("management"); 113 ("management").

[5] *E.g., id.* ¶¶ 75, 81-82, 107-108, 112, 114.

existing facts contradicted his public disclosures – especially when the defendant admits as much in his responses to the witnesses,"[6] the confidential witnesses in this case do not allege that the Individual Defendants (as opposed to "MasTec," "management" or unnamed "executives") ever saw anything that was contrary to the Company's public statements. *See, e.g., Fidel v. Rampell*, 2005 WL 5587454, at \*4 (S.D. Fla. Mar. 29, 2005) (refusing to infer scienter when plaintiff failed to allege that a confidential witness informed any of the defendants that fraud was occurring or discussed the fraud).

Additionally, even if, contrary to fact, one or more of the confidential witnesses had generally mentioned that Mr. Mas or Mr. Pita saw or heard information that contradicted MasTec's public statements, the Amended Complaint provides no details regarding the nature of that information. "If a complaint fails to allege at least an approximate date for a meeting or a single instance in an internal report – when a defendant was allegedly given specific information that contradicted or cast serious doubt upon his public statements, the Eleventh Circuit will infer that the omissions were strategic and the dates and content 'would not be helpful to their allegations.'" *Mogensen*, 15 F. Supp. 2d at 1219 (citation omitted).[7]

The lack of detail in the Amended Complaint highlights another problem regarding the supposed statements of confidential witnesses: Those individual witnesses would possess knowledge only of their own portion of a project and would not know whether allegedly underestimated costs in the component on which they worked (*e.g.*, engineering) would have been offset by costs savings in another project component (*e.g.*, procurement costs).

### 2. Lead Plaintiffs' Other Miscellaneous Theories Do Not Raise a Strong Inference of Scienter.

Lead Plaintiffs trot out the usual laundry list of alleged indicia of scienter in their Opposition. Neither separately nor collectively do they carry Lead Plaintiffs' burden.

- <u>Alleged Access to Information/Core Operations Doctrine</u>. Lead Plaintiffs argue that the Individual Defendants must have known of the Company's alleged accounting issues because they allegedly had access to information and the ET Segment allegedly

---

[6] *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1220 (M.D. Fla. 2014) (emphasis added).

[7] *See also Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1331 (S.D. Fla. 2004) (mere existence of internal reports insufficient to infer scienter).

4

was a core operation. Courts, however, only should infer scienter based on an individual defendant's access to information or the core operations doctrine where - unlike here - there are "particularized allegations that the executive knew or was severely reckless in disregarding the true facts."[8]

- SOX Certifications. Lead Plaintiffs rely on SOX certifications as evidence of scienter. Since every public company is required to have SOX certifications, however, courts routinely find that they add nothing to a scienter analysis absent "red flags" (*e.g.*, government investigations, whistleblowers, etc.) demonstrating that the individual defendants *knew* of the accounting violations.[9] No such flags have been alleged here.

- Alleged GAAP Violations. Courts routinely have found that GAAP violations, standing alone as here, cannot establish scienter.[10]

- Alleged "Plausible Financial Motive." Ordinary incentive compensation arrangements have been rejected repeatedly as indicia of scienter. Indeed, this Court recently found that receipt of incentive compensation could not support a finding of scienter where the amount was not alleged to be extraordinary.[11]

### 3. The Facts Alleged in the Amended Complaint Support a Compelling Inference Against Scienter.

---

[8] *Thorpe*, 111 F. Supp. 3d at 1373.

[9] *Waterford Twp. Gen. Emps. Ret. Sys. v. Bank United Fin. Corp.*, 2010 WL 1332574, at *18 (S.D. Fla. Mar. 30, 2010) (SOX certifications provided no evidence of scienter where "accounting irregularities" related to judgment of risk); *see also Mizzaro*, 544 F.3d at 1252.

[10] *See Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1272 (M.D. Fla. 2009) ("The restatement provides no inference of scienter, and certainly provides no cogent and compelling inference."). Lead Plaintiffs allege that the significance of GAAP violations here is bolstered by numerous "red flags" such as supposed violations of internal policies and a weakness in internal controls. *See* Pls.' Opp. at 18-19. Of course, these "red flags" would not have been known by the Individual Defendants until after completion of the Company's investigation.

[11] *See Thorpe*, 111 F. Supp. 3d at 1364 ("Receipt of a standard incentive-based bonus has limited probative value for scienter.") (quoting *Edward J. Goodman Life Income Trust*, 595 F. Supp. 2d at 1275).

In the end, Lead Plaintiffs ask the Court to ignore facts that weigh against finding of scienter: (1) the absence of suspicious stock sales; (2) the absence of confidential witness testimony demonstrating that Messrs. Mas and/or Pita had knowledge contradicting the Company's public statements; (3) the Company's stock repurchases during the period when the stock price allegedly was inflated; and (4) that the underlying accounting issues were discovered by the Company itself, and resulted in a prompt and independent investigation.[12]

Lead Plaintiffs urge the Court to instead infer that the Individual Defendants risked their careers and reputations by committing a fraud for no good reason. Then, Lead Plaintiffs argue that although the Individual Defendants may not actually have possessed any true motive to commit fraud, the Court should assume they were reckless despite the complete absence of any supporting facts and despite that the eventual impact of the Restatement on the Company's financial statements was miniscule. Pls.' Opp. at 22.

In short, Lead Plaintiffs' theories of scienter are not plausible, much less cogent. A simpler and more compelling explanation of events exists. That is, certain concerns were communicated to senior management through the Company's internal reporting system. The Company then ordered an independent investigation which resulted in a minor restatement that was met with a yawn by investors. Because this explanation is more compelling, Lead Plaintiffs have not pled scienter and the Amended Complaint should be dismissed in its entirety.[13]

**II.      The Amended Complaint Fails to Allege an Actionable Misstatement**

      **A.      The Defendants' Statements Were Not Materially False or Misleading.**

---

[12] *See, e.g.*, *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 777 (2d Cir. 2010) (inference of scienter was weakened rather than strengthened by defendant's decision to order an investigation upon learning of a potential problem).

[13] Lead Plaintiffs, in making their scienter argument, cite to a decision involving MasTec that they claim is "a striking bout of déjà vu." Pls.' Opp. at 17 (citing *Fuechtman v. MasTec, Inc.*, 390 F. Supp. 2d 1264 (S.D. Fla. 2005)). Of course, Lead Plaintiffs fail to mention that the case involved entirely different individual defendants and was filed more than 10 years ago – before *Tellabs* clarified the requirements for alleging scienter under the PSLRA. But more fundamentally, in that case the plaintiffs had precisely what is lacking here – particularized statements from confidential witnesses regarding the alleged knowledge of the specific individual defendants. While the plaintiffs in *Fuechtman* survived a motion to dismiss, the case ultimately was resolved by the parties.

Lead Plaintiffs do not dispute that only *material* misstatements or omissions are actionable.  Instead, Lead Plaintiffs argue that the Court should not address the question of materiality on a motion to dismiss.  This Court, however, and others within the Eleventh Circuit, often properly decide questions of materiality on a motion to dismiss.[14]

In contrast, Lead Plaintiffs' view is that an accounting issue is automatically and irrefutably deemed "material" for federal securities law purposes if it led to an accounting restatement.  Lead Plaintiffs can cite no authority for the proposition that materiality for federal securities law purposes is controlled by accounting standards set by private entities.  Rather, for federal securities law purposes, the question is whether the information at issue would assume actual significance to a reasonable investor.  *See generally S.E.C. v. Merchant Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007) (materiality depends on "whether a reasonable man would attach importance to the fact").

Notably, here, the net result of the Company's restatement was an overall non-material *increase* in the Company's 2014 reported net income for the first three quarters of 2014 – and an increase in the Company's stock price the day after the results of the Audit Committee's investigation were announced.  Under these facts, even at the pleadings stage, the immateriality of the alleged accounting mistake "is so plain that reasonable minds could not differ."  *Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182, 1189-90 (11th Cir. 2002); *see also Druskin*, 299 F. Supp. 2d at 1329 (deciding materiality on motion to dismiss).  This Court, therefore, may decide as a matter of law that the Amended Complaint does not allege material misstatements or omissions.

## B.  The Defendants' Forward-Looking Statements Are Not Actionable.

Lead Plaintiffs concede that forward-looking statements accompanied by adequate warnings are not actionable under the PSLRA.  Pls.' Opp. at 11.  Lead Plaintiffs, however, allege that the Company's forward-looking estimates and projections were false.  Am. Compl. ¶ 200.  As stated in Defendants' motion to dismiss, these estimates were accompanied by meaningful cautionary language and are entitled to the protections of the PSLRA safe harbor.  *See* Defs.' Mot. at 21-22.

*       *       *

---

[14] *See* Defs'. Mot. at 19 (collecting cases).

Because Lead Plaintiffs have failed to allege a material misstatement or omission, and because Defendants' forward-looking statements are protected by the statutory safe-harbor, the Amended Complaint should be dismissed.

### III.   The Amended Complaint Fails to Allege Loss Causation

Lead Plaintiffs arguments regarding loss causation are even more unrealistic.  Even in cases not subject to the heightened pleading standards of the PSLRA, the Court must draw only *reasonable* and *plausible* inferences.[15]  Lead Plaintiffs, however, ask the Court to infer patently unreasonable ones.  It is worth first briefly re-reviewing the pertinent chronology:  On March 17 and May 11, 2015, the Company made announcements that contained no new information regarding the accounting issues that were being independently investigated through the Company's Audit Committee.  When the results of the investigation were announced on July 30, 2015, the market viewed the Restatement as positive and the stock price *increased* accordingly – despite that the Company also had announced lower expectations for second quarter 2015 adjusted diluted earnings per share and for adjusted EBITDA.  Subsequently, on August 17, 2015, the Company announced an unrelated earnings miss attributable to events other than the prior inaccurate cost-to-complete estimates at a division of the Company.  *See* Defs.' Mot. at 5-8.

Ignoring the obvious implications of this chronology, Lead Plaintiffs speculate that the decline in MasTec's stock price somehow was attributable not to new economic information (an earnings miss), but instead to the market's imaginary, belated understanding that the previously-announced restatement (a restatement that resulted in a non-material net increase in earnings) reflected that fraud had occurred and supposedly would impact the Company's financial results in the future.

To begin, there is not a single fact alleged in the Amended Complaint that suggests that the Company's accounting adjustment would materially impact the Company's business *in future years*.  But in any event, as Lead Plaintiffs themselves necessarily concede, to constitute a corrective disclosure, a statement "must at least relate back to the misrepresentation *and not to some other negative information about the Company*."  *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1311, n.28 (11th Cir. 2011) (brackets and citations omitted)

---

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

(emphasis added).[16]  Thus, "repackaging of already-public information . . . is simply insufficient to constitute a corrective disclosure." *Sapssov v. Health Mgmt. Assoc., Inc.*, 608 Fed. App'x 855, 863 (11th Cir. 2015) (citation omitted).

Contrary to controlling law, Lead Plaintiffs' theory of loss causation also requires the Court to accept that disclosures that contained no new information about the Company's accounting matters were nevertheless corrective disclosures.  Lead Plaintiffs further invite the Court to ignore that the market reacted favorably to the Restatement – a Restatement that resulted in a net increase – in earnings.  Lead Plaintiffs' invitation should be rejected.  Lead Plaintiffs have failed to allege loss causation and the Amended Complaint should be dismissed.

### IV.    The Amended Complaint Fails to Allege Control Person Liability

As Lead Plaintiffs do not dispute, no claim of control person liability can proceed in the absence of a primary violation.  For all the reasons stated above, Count II therefore also should be dismissed with prejudice.

### V.    Leave to Amend Should Not be Granted

Lead Plaintiffs conclude their Opposition by casually requesting leave to amend their pleading yet again.  But "[w]here a request for leave to file an amended complaint simply is embedded within an opposition memorandum, the issue has not been raised properly." *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009).  This alone supports dismissal.

More fundamentally, Lead Plaintiffs do not explain why they should be given a third bite at the apple.  If they possessed facts that would support a viable claim, those facts would have been included in their Amended Complaint.  The absence of any such facts demonstrated that further amendment would be futile.  *See e.g., In re Galectin Therapeutics, Inc. Sec. Litig.*, 2015 WL 9647524, at *7 (N.D. Ga. Dec. 30, 2015) (leave to amend securities class action complaint would be futile where "the alleged misstatements, omissions, and scheme do not form the basis

---

[16] *See also id.* ("[B]ecause a corrective disclosure must reveal a previously concealed truth, it obviously must disclose new information, and cannot be merely confirmatory.").

of a claim against Defendants under the Exchange Act.").[17]   Therefore, dismissal of Lead Plaintiffs' Amended Complaint should be with prejudice.

## CONCLUSION

For all these reasons, the Court should grant Defendants' motion in its entirety and dismiss the Amended Complaint with prejudice.

Respectfully submitted,

HOGAN LOVELLS US LLP
600 Brickell Avenue
Suite 2700
Miami, Florida 33131
Telephone: (305) 459-6500
Facsimile:  (305) 459-6550

By:      /s/ Mark R. Cheskin
  Daniel E. González
  Fla. Bar No.: 780030
  Email: daniel.gonzalez@hoganlovells.com
  Mark R. Cheskin
  Fla. Bar No.: 708402
  Email: mark.cheskin@hoganlovells.com
  Jason L. Mays
  Fla. Bar No.: 106495
  Email: jason.mays@hoganlovells.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 14, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF.  Copies of the foregoing document will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:      /s/ Mark R. Cheskin

---

[17] *Cf. Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) ("This Court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.").